### A00A0172. PETERSON v. COLUMBUS MEDICAL CENTER FOUNDATION, INC. et al.
(533 SE2d 749)

BLACKBURN, Presiding Judge.

In this medical malpractice action, Darlene Peterson appeals from the trial court's grant of defendants', Columbus Medical Center Foundation, Inc. and Rivertown Pediatric, P.C. (the Medical Defendants), motion to dismiss her complaint. Peterson contends the trial court erred by dismissing: (1) her malpractice action for failure to attach the affidavit required by OCGA § 9-11-9.1 because she showed good cause to extend the time for filing the affidavit and (2) her action added by amendment to the original complaint which she asserts is one of simple negligence. Peterson also contends that OCGA § 9-11-9.1, as applied, violates her constitutional rights. For the reasons discussed below, we affirm in part and reverse in part.

On appeal,

[a] motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the

---

[11] OCGA § 14-8-25 (b) (3).

claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

(Footnotes omitted.) *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997).

On March 21, 1997, Peterson brought her infant son, Davaun, who had been born prematurely in October, to Dr. Thomas Ellison of Rivertown Pediatric in Columbus because the infant was lethargic. Dr. Ellison ordered x-rays and blood tests to be performed at Columbus Regional Pediatric Center located in the same building. After these procedures were performed, but before the results were read, Peterson took her child home as instructed by Dr. Ellison. During the early morning hours of March 22, 1997, Davaun's heart monitor sounded. Peterson called 911 and administered CPR, but Davaun could not be resuscitated.

Peterson asserts that shortly after the death of her son, she sought the assistance of an attorney in Alabama. However, in February 1999, she was told that no action had been filed and that the attorney could not represent her. Nonetheless, that same attorney assisted Peterson in the preparation of a pro se complaint, asserting medical malpractice, which was filed on March 19, 1999, shortly before the statute of limitation would expire for any cause of action which Peterson might have against the Medical Defendants. At the time of filing, Peterson had not obtained an affidavit which was required to be attached to the complaint, and she did not allege that the failure to attach the affidavit was because the statute of limitation would expire within ten days of the date of filing. See OCGA § 9-11-9.1 (a) and (b) (1997).

On April 19, 1999 and May 4, 1999, the Medical Defendants filed answers to the complaint, asserting as a defense, Peterson's failure to comply with the requirements of OCGA § 9-11-9.1. Contemporaneously with their answers, the Medical Defendants filed motions to dismiss the complaint on this ground. On May 6, 1999, the motions were set for hearing on June 3, 1999.

Subsequently, Peterson obtained counsel to represent her. On June 2, 1999, Peterson filed a first amendment to the complaint, adding a count in simple negligence and the following statement: "Plaintiff states this action was filed pro se on March 19, 1999 within ten days of the expiration of the statute of limitations period and because of such time constraints, an affidavit of an expert could not be prepared." On the same day, Peterson filed a request to file a motion out of time and a motion to extend the time to file an affidavit

alleging professional negligence.

The hearing on the motions to dismiss was held on June 3, 1999. On June 16, 1999, the trial court granted the Medical Defendants' motions and dismissed the complaint. On June 28, 1999, Peterson filed a motion to reconsider the order of dismissal, attaching to it an affidavit supporting her allegations of professional malpractice. The trial court denied the motion to reconsider.

1. In her first enumeration of error, Peterson argues that her amended complaint triggered the automatic 45-day extension to file the affidavit under OCGA § 9-11-9.1 (b). She contends that, after that extension had expired, the trial court abused its discretion by failing to grant her motion for a "good cause" extension provided by OCGA § 9-11-9.1 (b) and by dismissing her medical malpractice action.

(a) A plaintiff asserting a professional malpractice action must attach to the complaint a supporting affidavit of a qualified expert. OCGA § 9-11-9.1 (a). Under OCGA § 9-11-9.1 (b), a plaintiff is automatically entitled to a 45-day extension of time to file the affidavit where (1) the statute of limitation is about to expire and (2) the plaintiff alleges the affidavit could not be obtained for that reason:

> The contemporaneous filing requirement of subsection (a) of this Code section [requiring an affidavit] shall not apply to any case in which the period of limitation will expire or there is a good faith basis to believe it will expire on any claim stated in the complaint within ten days of the date of filing and, because of such time constraints, the plaintiff has alleged that an affidavit of an expert could not be prepared. In such cases, the plaintiff shall have 45 days after the filing of the complaint to supplement the pleadings with the affidavit.

OCGA § 9-11-15 allows a plaintiff to amend the complaint to comply with OCGA § 9-11-9.1 (b) within 45 days of filing and thus trigger the automatic extended filing period. *Glisson v. Hosp. Auth. of Valdosta &c.*, 224 Ga. App. 649 (481 SE2d 612) (1997) (complaint amended and affidavit filed within 45 days of the complaint); *Thompson v. Long*, 201 Ga. App. 480 (411 SE2d 322) (1991) (complaint amended and affidavit filed within 45 days of the original complaint). Any such amendment relates back to the filing of the original complaint, so the extended filing period begins on the date the original complaint was filed. *Glisson*, supra.

Thereafter, a plaintiff who triggered OCGA § 9-11-9.1 (b) may request additional time to file the affidavit. "The trial court may, on motion, after hearing and for good cause extend such time as it shall determine justice requires." OCGA § 9-11-9.1 (b). Our Supreme Court

has stated that such an extension for "good cause" can be considered even after the 45-day period has expired. *Labovitz v. Hopkinson*, 271 Ga. 330, 332-333 (2) (519 SE2d 672) (1999), overruling by implication *Dixon v. Barnes*, 214 Ga. App. 7 (1) (446 SE2d 774) (1994). In that case, the Supreme Court held that res judicata did not bar a nonmalpractice claim arising out of the same facts as a malpractice claim which had been dismissed for failure to file an expert affidavit under OCGA § 9-11-9.1 (1989). In its analysis of the res judicata issue, the Supreme Court stated that "[OCGA] § 9-11-9.1 (b) (1989) does not, by its terms, limit a subsection (b) plaintiff to request a 'good cause' extension of time within that 45-day period."[1] *Labovitz*, supra at 333 (2). Although *Labovitz*, supra, did not explicitly overrule *Dixon*, supra, we are constrained by the Supreme Court's interpretation which addresses the very issue before us.

Therefore, applying this law to the facts before us, we find that Peterson properly availed herself of OCGA § 9-11-15 to amend the complaint to include the language of OCGA § 9-11-9.1 (b). *Glisson*, supra. Thus, despite amending the complaint 75 days after it was filed, Peterson triggered OCGA § 9-11-9.1 (b) and the automatic 45-day extended filing period. Id. However, Peterson could not and did not file the affidavit within the 45-day period, as the automatic extended filing period had already expired. Id. Yet, since Peterson fell within the provisions of OCGA § 9-11-9.1 (b), she was not precluded from seeking a good cause extension of time to file the affidavit after the statutory 45-day period had expired but before the motions to dismiss had been granted. *Labovitz*, supra.

(b) Having decided that Peterson was not precluded from seeking an extension to file the affidavit, we turn to whether the trial court's denial of her motion for an extension was erroneous. In reviewing a trial court's decision whether to grant an extension of time to file an affidavit,

> [w]e will not substitute our judgment for that of the trial court when there is no obvious or apparent abuse of discretion by the court in what clearly is a matter of discretion. Where the trial court hears evidence, considers briefs and arguments and thereafter in the exercise of its discretion renders a judgment on a motion, in the absence of legal error, the sole question for determination is whether there is any evidence to authorize and support that exercise of discretion.

---

[1] We note that *Labovitz* applied OCGA § 9-11-9.1 (1989) and OCGA § 9-11-9.1 (1997) applies to this case; however, the language which the Supreme Court interpreted was not changed by the legislature.

(Citations and punctuation omitted.) *Archie v. Scott*, 190 Ga. App. 145, 147 (3) (378 SE2d 182) (1989).

After Peterson filed her motion for extension of time, the trial court held a hearing on the motions to dismiss the complaint for failure to comply with the affidavit requirement. There is no transcript of that hearing in the record. Subsequently, Peterson, at the request of the trial court, filed a supplemental brief in support of her request for an extension of time to file her expert's affidavit. Afterward, the motions to dismiss were granted. Although the trial court's order made no specific finding that Peterson failed to show "good cause" sufficient to support an extension, the record shows the motion was considered by the trial court. The trial court implicitly denied Peterson's motion by the grant of the motions to dismiss.

We cannot say the trial court abused its discretion by denying Peterson's motion for a good cause extension of time to file the expert's affidavit under the circumstances of this case. Peterson argues that she has demonstrated "good cause" because neither she nor the Alabama counsel who assisted her with the pro se complaint understood that an affidavit was required. She further explains the failure to file by stating that she did not understand the significance of failing to file an affidavit, even after receiving the Medical Defendants' answers which raised the lack of an affidavit as a defense. Peterson obtained present counsel, who explained the affidavit requirement, well after the complaint, the answers, and the motions to dismiss were filed. The motion to extend was filed 75 days after the complaint was filed. And, at the time of the hearing on the motions to dismiss, Peterson still had no affidavit.

Peterson urges this Court not to hold her pro se complaint to the same pleading standard as one drafted by an attorney, relying on *Thompson*, supra. See *Evans v. City of Atlanta*, 189 Ga. App. 566 (377 SE2d 31) (1988). But, unlike *Thompson* where the plaintiff failed to use the "magic language," the present case is not one of inartful or poor drafting, but one of ignorance of the law. "The maxim that ignorance of the law offers no legal excuse needs no citation." (Punctuation omitted.) *Maddox v. Wilson*, 219 Ga. App. 158, 159 (2) (464 SE2d 226) (1995). A plaintiff proceeding pro se still must comply with the affidavit requirement. *ABE Engineering v. Griffin, Cochran &c.*, 212 Ga. App. 586 (443 SE2d 1) (1994). We reject the contention that pro se status and ignorance of the affidavit requirement are sufficient bases to establish "good cause" to extend the time for filing.

(c) The trial court did not err by dismissing Peterson's professional malpractice claim. Peterson failed to file an expert affidavit within the 45-day statutory extension, and the trial court found that Peterson had not demonstrated the "good cause" necessary to justify another extension of time in which to file the required affidavit.

*Labovitz*, supra.

> If an affidavit is not filed within the period specified in this subsection or as extended by the trial court and the defendant against whom an affidavit should have been filed alleges, by motion to dismiss filed contemporaneously with its initial responsive pleading that the plaintiff has failed to file the requisite affidavit, the complaint is subject to dismissal for failure to state a claim.

OCGA § 9-11-9.1 (b).

2. In her second enumeration of error, Peterson contends the trial court erred by dismissing her claims added by amendment to the original complaint because those claims assert simple negligence. We agree.

The Medical Defendants argue that, although the claims in Count 4 are characterized as ordinary negligence, the claims are, in fact, for professional negligence. "Whether an action alleges professional malpractice or simple negligence depends on whether the professional's alleged negligence required the exercise of professional judgment and skill." *Mendoza v. Pennington*, 239 Ga. App. 300 (1) (519 SE2d 715) (1999). Claims of allegedly negligent administrative acts which do not require professional knowledge or skill assert ordinary negligence. *Dent v. Mem. Hosp. of Adel*, 270 Ga. 316, 318 (509 SE2d 908) (1998). Thus,

> [w]hether to use certain equipment at all, what type of equipment to use, and whether certain equipment should be available in a specific case certainly are decisions which normally require the evaluation of the medical condition of a particular patient and, therefore, the application of professional knowledge, skill, and experience. However, the failure to operate equipment correctly or in accordance with a doctor's instructions or to keep certain equipment on hand is only ordinary, not professional, negligence. See *Robinson v. Med. Center of Central Ga.*, 217 Ga. App. 8, 9-10 (456 SE2d 254) (1995); *Sparks v. Southwest Community Hosp. & Med. Center*, 195 Ga. App. 858 (395 SE2d 68) (1990); *Porter v. Patterson*, 107 Ga. App. 64, 71 (1) (129 SE2d 70) (1962).

Id. In *Dent*, the Court held that a nurse's alleged failure to activate an alarm, as a doctor had ordered, was ordinary negligence. Id. See also *Smith v. North Fulton Med. Center*, 200 Ga. App. 464 (408 SE2d 468) (1991) (claim that employees failed to carry out instructions was ordinary negligence); *Jenkins County Hosp. Auth. v. Landrum*, 206 Ga. App. 753 (426 SE2d 572) (1992) (claim that hospital failed to

have appropriate equipment alleged ordinary negligence).

In this case, Count 4 of the complaint generally alleges that the Medical Defendants were negligent through the administrative non-professional functions of its employees. It further alleges, inter alia, that the Medical Defendants were negligent in failing to properly operate or equip their facilities and that the Medical Defendants were negligent in failing to follow adequate policies or procedures regarding the reading, interpretation and communication of medical tests.

This case is on appeal from the grant of a motion to dismiss. Unlike a summary judgment proceeding where the nonmovant cannot rest upon its pleadings and has a duty to come forward with evidence demonstrating a question of fact, under the facts of this case, the motion to dismiss was decided based on the complaint. The motions to dismiss were not converted to summary judgment motions by the consideration of evidence. See *Martin v. Brown*, 222 Ga. App. 566 (474 SE2d 742) (1996). Allegations of the complaint are construed most favorably to Peterson, even though other unfavorable constructions are possible. *Ford v. Whipple*, 225 Ga. App. 276, 277 (483 SE2d 591) (1997). "For the purposes of the motion . . . all well-pleaded material allegations of the opposing party's pleadings are to be taken as true, and all allegations of the moving party which have been denied are taken as false." (Punctuation omitted.) Id.

So taken, the allegations do not disclose with certainty that Peterson would not be entitled to relief under a theory of simple negligence or that Peterson could not possibly introduce evidence to support such a claim. *Ford*, supra; *Anderson*, supra; *Dent*, supra. Consequently, the grant of the motions to dismiss was erroneous and is reversed with regard to Count 4 of the amended complaint.

3. In her third enumeration of error, Peterson contends that OCGA § 9-11-9.1, as applied, violates her constitutional rights. Specifically, Peterson contends that she is denied her right to trial, to due process and to equal protection under the law because she is unable to pay for the medical records necessary for obtaining an affidavit. The costs of copying medical records are charged by private entities, not the state. As there is no state action, Peterson's constitutional arguments fail. See *Etkind v. Suarez*, 271 Ga. 352, 356 (4) (519 SE2d 210) (1999); *Spencer v. McCarley Moving &c. Co.*, 174 Ga. App. 525 (330 SE2d 753) (1985). Compare *Boddie v. Connecticut*, 401 U. S. 371 (91 SC 780, 28 LE2d 113) (1971) (due process denied to indigent plaintiffs who could not bring divorce action except upon payment of court fees and service of process costs).

*Judgment affirmed in part and reversed in part. Eldridge and Barnes, JJ., concur.*

DECIDED APRIL 12, 2000 —
RECONSIDERATIONS DENIED MAY 1, 2000.

*Steven L. Atha*, for appellant.
*Bradley & Hatcher, Richard Y. Bradley, Robert C. Martin, Jr., Carter R. Page*, for appellees.